# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | |
| TRINSIC, INC., et al., | ) Bankruptcy Case No. 07-10324 |
| Debtors. | ) |
| ------------------------------------------- | ) |
| | ) Adversary Case No. 07-1089 |
| MICHAEL C. REIBLING, Trustee of the Estate of Trinsic, Inc., Trinsic Communications, Inc., Touch 1 Communications, Inc., Z-Tel Network Services, Inc., and Z-Tel Consumer Services, LLC, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 08-00120-CG-B |
| THERMO CREDIT, LLC | ) |
| Defendant. | ) |

## ORDER

This is an appeal from an order in Adversary Proceeding 07-1089, within Bankruptcy Case No. 07-10324-MAM-7. This court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 158(a)(1). Appellant, Thermo Credit, LLC ("Thermo"), asserts that the U.S. Bankruptcy Court Judge erred in denying Thermo's motion to compel immediate production of documents withheld on attorney-client privilege grounds. The court finds that the U.S. Bankruptcy Court for the Southern District of Alabama correctly concluded that there had been no waiver of the attorney-client privilege regarding the documents in question. As such, the decision of the U.S. Bankruptcy Court is due to be AFFIRMED.

1

## BACKGROUND

In July 2008, Thermo served a non-party subpoena duces tecum on Matrix Telecom regarding records Matrix obtained by purchasing, in a bankruptcy auction, substantially all of the assets of Trinsic including Trinsic's servers and computer hard drives. The Trustee moved to quash the subpoena asserting, among other things, that the information is protected by the attorney-client privilege and/or the work product doctrine. (Adv. Doc. 65). Thermo moved to compel compliance with the subpoena. (Adv. Doc. 88). On December 22, 2008, the bankruptcy judge entered an Order finding that the attorney-client privilege had been waived with respect to any of the documents and electronically stored information ("ESI") in Matrix's possession. (Doc. 44-1, p. 11). The bankruptcy court also directed the Trustee to provide Thermo with a privilege log identifying each item which the Trustee is withholding on the basis of a claim of work product protection in sufficient detail to enable Thermo to challenge the claim and for the court to determine its validity. (Doc. 44-1, p. 12).

In April 2010, Thermo moved to compel the immediate production of Trinsic's business records in the hands of its former CFO, Don Davis. Don Davis left his position with Trinsic in May 2007. Prior to leaving his employment with Trinsic, Don Davis made copies of all of his e-mails from Trinsic's servers along with a copy of the hard drive of his Trinsic computer, with the assistance of Trinsic's IT staff. During a January 22, 2010 deposition, Don Davis disclosed that, the day before the deposition, he had given the Trustee's counsel a CD containing Trinsic e-mails and all files on his Trinsic computer pertaining to Thermo. The Trustee was reportedly unaware, until just prior to Davis's deposition that Davis had copied his hard drive prior to

leaving Trinsic. Both Mr. Davis and the Trustee's counsel refused to provide a copy of the CD to Thermo at the deposition because they asserted that some of the documents may constitute privileged communications. The parties telephoned the bankruptcy court for guidance and the bankruptcy judge stated that she would rule consistently with the Matrix ruling. (Doc. 46-4, p. 6). The bankruptcy judge also stated that she understood there were timing issues, and that they needed to look at the disk and get the documents with the privilege and work product logs to the other side and that she did not have any problem with extending discovery to finish this one deposition later. (Doc. 46-4, pp. 6-7, 12). Counsel stated that they would go through what was on the disk and produce what they believed was not privileged and give a brief description of what they believed is privileged, and that the court could determine what is or is not privileged. (Doc. 46-4, p. 9). Mr. Davis agreed that he would make himself available to complete his deposition after that process has occurred. (Doc. 46-4, p. 9). On June 4, 2010, following briefing and oral argument, the bankruptcy court found that there had been no general waiver of the attorney-client privilege with respect to the Trinsic e-mails in Don Davis' possession, and, therefore, denied Thermo's motion to compel. (Doc. 44-1).

Thermo appeals the order of June 4, 2010. Thermo asserts that the Trustee waived any privilege to the Davis documents just as the Bankruptcy Court had previously ruled that the privilege had been waived as to the Matrix documents. According to Thermo, any privilege is waived because the Trustee made no effort to retain, recover, or protect privileged documents and ESI in the hands of Mr. Davis, or even to determine whether Davis possessed any Trinsic records at all, until they were subpoenaed by Thermo.

**DISCUSSION**

The bankruptcy court's factual findings are generally reviewed under the clearly erroneous standard. In re Downtown Properties, Ltd., 794 F.2d 647, 651 (11th Cir. 1986)(citing In Re Chalik, 748 F.2d 616, 619 (11th Cir. 1984)).

> Sitting in its appellate capacity, the court makes no independent factual findings. [In re Williamson, 15 F.3d 1037, 1038 (11th Cir. 1994)]. The bankruptcy court's findings of fact will not be set aside unless clearly erroneous. Id. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed. General Trading, Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1494 (11th Cir. 1997).

In re Hatem, 273 B.R. 900, 903 (S.D. Ala. 2001). The bankruptcy court's conclusions of law are reviewed on a de novo basis. In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).

The bankruptcy court stated at the hearing that she did not believe that the Trustee had knowledge of Mr. Davis' actions in taking the documents. The bankruptcy judge explained that she could not say what the IT employees knew, "obviously they were copying them," but the Trustee did not know, and therefore, there was no waiver of privilege. (Doc. 46-6, p. 27).

"The purpose of the attorney-client privilege is to encourage open and complete communication between a client and his attorney by eliminating the possibility of subsequent compelled disclosure of their confidential communications." United States v. Noriega, 917 F.2d 1543, 1550 (11th Cir. 1990) (citation omitted). "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." Bogle v. McClure, 332 F.3d 1347, 1358 (11th Cir. 2003) (citations and internal quotations omitted). "To determine if a particular communication is confidential and protected by the attorney-client privilege, the privilege holder must prove the

4

communication was '(1) intended to remain confidential and (2) under the circumstances was reasonably expected and understood to be confidential.' " Id. (quoting United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985)).

In support of its contention that the Trustee waived the privilege, Thermo cites IMC Chemicals, Inc. v. Niro Inc., 2000 WL 1466495 (D.Kan. July 19, 2000). In IMC Chemicals, after discovering that a consultant attorney had taken several documents with him when his consultation agreement with the plaintiff expired, the plaintiff wrote several times demanding the return of the documents to no avail. The consultant either failed to reply to the letters or refused to return the documents. Id. at *5. The plaintiff did not take any legal action to recover the documents. A year later, the defendant in the litigation took the consultant's deposition, at which the consultant produced two of the documents that he had retained and testified regarding some of the content of the documents. The plaintiff's counsel objected on the basis of privilege, and withdrew the documents from discovery. The defendant then moved to compel the plaintiff to produce the documents. See id., at *5-*6. The court noted that "[w]ith respect to a corporation, such as plaintiff, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors," "a mere employee of a corporation cannot waive the corporation's privilege." Id. at *10 (citations and internal quotations omitted). A former corporate employee also cannot waive the privilege of the corporation. Id. at * 24 (citation omitted). However, if the corporation authorizes or consents to the disclosure or "fails to take adequate steps to insure the confidentiality of its documents, . . . the corporation itself may impliedly waive the privilege with respect to documents retained by former employees." Id. at 24 (citations omitted). The court also noted

that for the testimony at the deposition to constitute a waiver, "it had to have disclosed the substance of privileged communications." Id. at *11 (citation omitted). "If only unprivileged information is revealed there cannot be a waiver." Id. (citation omitted). The court found that the deponent had divulged specific privileged attorney-client communications and that the corporation's failure to timely object to the questioning, or to take reasonable measures to halt the disclosure, procedurally waived the privilege. Id. at *11, *14. The court found "limited, if any, precautions taken by plaintiff to assure the confidentiality of the documents kept by [the consultant]." Id. at *27. Finally, the court emphasized that plaintiff took more than a year to take steps to re-obtain the documents: "Even were the Court to excuse the initial failure to protect the documents from being removed from plaintiff's premises, the Court can find no acceptable reason for plaintiff not taking more aggressive steps to reacquire the documents after it learned that [the consultant] still had them in late 1997." Id.

     In the instant case, the documents were copied by employees who are not alleged to be officers or directors of the company and there is no evidence that officers or directors of the company knew that Davis copied and retained the documents. The bankruptcy judge specifically found that the Trustee had no knowledge of Davis' possession of the documents and this court finds that the bankruptcy judge was not clearly erroneous in that factual conclusion. When the Trustee became aware of the existence of the documents in Davis' hands, he objected to their disclosure and asserted the attorney-client privilege. The documents were not provided at the deposition and there has been no allegation that the substance of the documents was disclosed during the deposition or at any other time.

     In contrast, the Matrix documents were disclosed to an independent third party when they

6

were provided to Matrix. The Trustee and Trinsic's officers and directors should have known that there were many documents, some of which may be privileged, on its servers and computer hard drives. Yet they apparently made no effort to delete or otherwise protect the confidentiality of the information before it was purchased by Matrix.

Thermo argues that the June 4, 2010 order is inconsistent with the Matrix order. The court disagrees. As discussed above, the circumstances regarding Matrix were different. The court does not find the two rulings to be inconsistent. To the extent Thermo argues that the bankruptcy judge's statement during the telephonic hearing that her ruling would be consistent with the Matrix order impliedly ruled that the privilege was waived, the court also disagrees. The Matrix order involved many issues other than a finding of waiver. It is not immediately clear to what extent the bankruptcy judge meant that the rulings would be consistent, but it is clear from the transcript of the telephonic hearing that she did not rule during the telephonic hearing that the privilege was waived. It is equally clear that the parties did not understand the judge to mean that the privilege was waived. At the end of the hearing, the bankruptcy judge directed counsel to prepare an order stating that the discovery deadline was extended for the purpose of re-convening the deposition and that the attorney would review the disk and prepare a privilege and work product log as soon as possible. (Doc. 46-4, p. 12). None of the statements by the bankruptcy judge or counsel indicate that any of them believed that the judge had ruled that the attorney-client privilege had been waived. The court and the parties were merely trying to provide a framework for handling the review and production of the documents.

The court finds that, because the substance of the documents was never disclosed, because the Trustee had no knowledge that Davis had the documents until just before the

7

deposition, and because the Trustee took steps to protect the documents upon learning of their existence, there was no waiver of the attorney-client privilege.

## CONCLUSION

For the reasons stated above, the decision of the U.S. Bankruptcy Court dated June 4, 2010, is **AFFIRMED.**

**DONE and ORDERED** this 6th day of July, 2010.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE